IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:10CR405 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | SENTENCING MEMORANDUM |
| FELIPE GARDEA-HERNANDEZ, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at sentencing hearings on July 22, 2011, and August 5, 2011.

**I. Facts**

The defendant was charged with illegal reentry after deportation with an aggravated felony, in violation of 8 U.S.C. § 1326. Filing No. 1, Indictment. The defendant entered a plea of guilty to Count I of the Indictment. Filing No. 17, text minute entry; Filing No. 19, Petition. The court accepted his plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated his sentence under the United States Sentencing Guidelines ("the Guidelines"). Filing No. 17, text minute entry.

In the PSR, the defendant's offense conduct was based on the prosecutor's version of events. The PSR relates that the defendant had been arrested and while in jail, an Immigration and Customs Enforcement ("ICE") agent encountered the defendant and identified him as a previously removed alien. *Id.* at 4. The PSR states that the defendant

admitted that he was illegally present in the United States and that he had last entered the United States in 2004.  *Id.*  Further, it states that "[c]onviction documents and records of the defendant's fingerprints indicate he was convicted of Burglary of a Habitation in the First Degree on September 23, 1988, sentenced to ten years, deferred sentence and placed on probation."  *Id.*  He later admitted a violation of probation, a conviction for the burglary of a habitation offense was entered and he was sentenced to five years in the Texas Department of Corrections.  *Id.*

The Probation Office determined that the defendant's base offense level was 8 under U.S.S.G. § 2L1.2, but found that a 16-level enhancement was applicable under U.S.S.G. § 2L1.2(b)(1)(A)(ii) because the defendant had been convicted of a crime of violence, that is, burglary of a habitation.  *Id.* at 5.  The application of the enhancements would result in an adjusted offense level of 24.  *Id.*  After subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, the defendant's total offense level under the Guidelines would be 21.  *Id.*  The Probation Office assessed 6 criminal history points for convictions for drug possession, burglary and criminal mischief, resulting in a criminal history category of III.  *Id.* at 6-8.  At offense level 21 and criminal history category III, the defendant's range of imprisonment under the Guidelines is 46 to 57 months.  *Id.* at 12.

The government had no objection to the findings in the PSR.  The defendant objected to the sixteen-level enhancement, arguing that the defendant's conviction for burglary of a habitation does not qualify as a conviction for a crime of violence under the Guidelines.  Filing No. 24.  He also moved for downward departure for cultural assimilation.  Filing No. 20.

2

The evidence adduced at the sentencing hearing on July 22, 2011, shows that the Texas indictment charged that on or about June 21, 1988, the defendant "did . . . unlawfully, intentionally, and knowingly and without the effective consent of [the owner] enter a habitation owned by the said [owner], and did then and there commit and attempt to commit theft." Filing No. 27, Exhibit List, Ex. 1. The "Judgment on Plea of Guilty and Deferred Adjudication Order" from the state court proceeding indicates only that the defendant entered a plea of guilty to "Burglary of Habitation." *Id.*, Ex. 2. The "Judgment Adjudicating Guilt" indicates only that the defendant was convicted of "Burglary of Habitation TPC 30.02." *Id.*, Ex. 3.

**II. Law**

"Congress has prescribed greatly increased maximum sentences for aliens who are convicted of illegal reentry if they were removed after committing an aggravated felony (twenty years), a felony other than an aggravated felony (ten years), or three or more misdemeanors involving drugs or crimes against the person (ten years)." *United States v. Reyes-Solano,* 543 F.3d 474, 476 (8th Cir. 2008); *see* 8 U.S.C. §§ 1326(b)(1), (2). In most other cases, the maximum sentence is two years. *Id.*; *see* § 1326(a). "Reflecting this statutory progression, § 2L1.2(b)(1) of the now-advisory Sentencing Guidelines provides a sliding scale of offense level increases for these types of prior convictions, beginning with a sixteen-level increase for the most serious felonies, and ending in subpart (E) with a four-level increase for 'three or more convictions for misdemeanors that are crimes of violence.'" *Reyes-Solano,* 543 F.3d at 476 (quoting U.S.S.G. § 2L1.2(b)(1)(E). A "crime of violence" is defined as including the enumerated offense of burglary of a dwelling "'or any other federal, state, or local law that has as an element the use, attempted use, or

3

threatened use of physical force against the person of another.'" *United States v. Reyes-Solano,* 543 F.3d 474, 476 (8th Cir. 2008) (quoting U.S.S.G. § 2L1.2, comment. (n.1(B)(iii)). The government has the burden of proving by a preponderance of the evidence that the defendant's prior conviction qualifies for the sentencing enhancement. *United States v. Forrest*, 611 F.3d 908, 913 (8th Cir. 2010). Whether an offense is a crime of violence is a legal determination. *United States v. Hennecke*, 590 F.3d 619, 620 (8th Cir. 2010).

To determine whether a pre-removal conviction based on a guilty plea was for a crime of violence under § 2L1.2(b)(1), the court applies the "'categorical approach' prescribed in *Shepard v. United States*, 544 U.S. 13, 26 (2005)." *Reyes-Solano*, 543 F.3d at 477. Under the categorical approach, the court looks "'to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [the defendant's pre-removal ] crime.'" *Id.* (quoting *Leocal v. Ashcroft,* 543 U.S. 1, 7 (2004)). The court considers the crime "as generally committed," avoiding "the practical difficulty of trying to ascertain at sentencing, perhaps from a paper record mentioning only a guilty plea, whether the present defendant's prior crime, as committed on a particular occasion, did or did not involve violent behavior." *Chambers v. United States,* 555 U.S. 122, 125 (2009). An offense constitutes "burglary" for purposes of a sentence enhancement if "either its statutory definition substantially corresponds to 'generic' burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant." *Taylor v. United States*, 495 U.S. 575, 602 (1990). The Supreme Court has defined generic burglary as follows:

> Although the exact formulations vary, the generic, contemporary meaning of burglary contains at least the following elements: an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime. . . . [A] person has been convicted of burglary . . . if he is convicted

4

> of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, *with intent to commit a crime*.

*Id.* at 598-99 (emphasis added); *United States v. Eason*, 643 F.3d 622, 623-24 (8th Cir. 2011) (stating that "[a]n offense that includes the elements of 'generic burglary'—'unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime'—is 'burglary'"). "If the statute at issue criminalizes both conduct that would qualify as a crime of violence and conduct that would not," the court may consider limited judicial documents in order to determine whether the offense is a crime of violence. *Reyes-Solano*, 543 F.3d at 477 (quoting *United States v. Lopez-Zepeda*, 466 F.3d 651, 653 (8th Cir. 2006); *see United States v. Vasquez-Garcia*, 449 F.3d 870, 873 (8th Cir. 2006).

> The Texas burglary statute under which the defendant was convicted provides:
>
> (a)  A person commits an offense if, without the effective consent of the owner, the person:
>
> > (1)  enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or
> >
> > (2)  remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or
> >
> > (3)  enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

Tex. Penal Code Ann. § 30.02. Under Texas law, the crime of burglary in violation of subsection (a)(3) of that statute can be committed by unlawful or unprivileged entry into a building without any intent to commit a crime. *Flores v. State*, 902 S.W.2d 618, 620 (Tex. Ct. App. 1995) (noting that "[p]rosecution under section 30.02(a)(3) is appropriate when the accused enters without effective consent and, lacking intent to commit any crime upon his entry, subsequently forms that intent and commits or attempts to commit a felony or theft").

5

The Court of Appeals for the Fifth Circuit has determined that a conviction under Texas Penal Code § 30.02(a)(3) does not meet the generic, contemporary definition of burglary. *United States v. Rodriguez-Serna,* — F.3d —, —, 2011 WL 2437825, *1 (5th Cir. June 17, 2011); *United States v. Constante,* 544 F.3d 584, 587 (5th Cir. 2008) (holding that a conviction under § 30.02(a)(3) does not constitute a crime of violence because that statutory subsection does not require entry with an intent to commit a crime of violence); *United States v. Herrera-Montes,* 490 F.3d 390, 391 (5th Cir. 2007) (noting that subsection 30.02(a)(3) does not require intent to commit a crime at the time of entry in or remaining in a dwelling and does not qualify as a crime of violence). In contrast, a conviction for burglary of a habitation under subsection (a)(1) of the statute requires proof of the element of intent to commit a felony or theft at the time of entry and constitutes a crime of violence. *See United States v. Carrillo,* 2011 WL 1332003, *1 (5th Cir. Apr. 7, 2011); *United States v. Garcia–Mendez,* 420 F.3d 454, 456–57 (5th Cir. 2005).

The Sentencing Guidelines are no longer mandatory and the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *See United States v. Booker,* 543 U.S. 220, 260-61 (2005); *Gall v. United States,* 552 U.S. 38, 59 (2007); *Kimbrough v. United States,* 552 U.S. 85, 101 (2007). In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a), including the nature of the offense, history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant. *See*, e.g., *Gall,* 552 U.S. at 41, 49-50 & n.6. That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough,* 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)). The sentencing court must first calculate the Guidelines

range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. *Nelson v. United States,* 555 U.S. 350, —, 129 S. Ct. 890, 891-92 (2009) (per curiam). District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough,* 552 U.S. at 101 (quoting *Booker*, 543 U.S. at 245-246). The district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a), including the nature of the offense, history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant. *See, e.g., Gall* v. *United States,* 552 U.S. 38, 41, 49-50 & n.6 (2007). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough,* 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)).

### III. Discussion

The evidence shows that the language in the Texas indictment tracks the language of subsection (a)(3) of the statute. The court finds the opinion of the Fifth Circuit is authoritative with respect to the interpretation of the Texas statute. Because a conviction under § 30.02(a)(3) does not require the element of intent at the time of entry, it does not meet the definition of a generic burglary offense and accordingly does not qualify as a crime of violence for the purposes of the sixteen-level enhancement. The court finds the government has not shown by a preponderance of the evidence that the enhancement is warranted.

The court sustains the defendant's objection to the PSR. The court will not apply the sixteen-level enhancement. The court otherwise adopts the findings in the PSR. The court finds defendant's base offense level is 8. The defendant was previously deported after a felony conviction, so a four-level enhancement under U.S.S.G. § 2D1.2L(b)(1)(D) is appropriate, resulting in an offense level of 12. The defendant is entitled to a 2-level reduction for acceptance of responsibility under U.S.S.G. § 3(1.1(a), resulting in a total offense level of 10. At criminal history category III and total offense level 10, the defendant's recommended sentencing range under the Guidelines is 10 to 16 months.

Under the Guidelines that took effect on November 1, 2010, cultural assimilation may be a basis for a downward departure. U.S.S.G. § 2L1.2, comment. (n.8). However, such a departure should be considered only if:

> the defendant formed cultural ties primarily with the United States from having resided continuously in the United States from childhood, (B) those cultural ties provided the primary motivation for the defendant's illegal reentry or continued presence in the United States, and (C) such a departure is not likely to increase the risk to the public from further crimes of the defendant.

*Id.* The court finds a departure for cultural assimilation is not appropriate in this case. Although the defendant may have spent twenty years in this country before he was convicted of a felony, the fact remains that he has a criminal record. Under the circumstances, the court finds the motion for downward departure should be denied.

In consideration of the § 3553 factors, the court finds a sentence outside the Guidelines is not warranted in this case. Absent application of the sixteen-level enhancement, the court finds that a Guidelines-recommended sentence of 10 months, with credit for time served, will fulfill the objectives of sentencing set out in Section 3553(a). The public will be adequately protected by the imposition of a term of supervised release of two

years and by the defendant's likely deportation. The deterrent effect of any longer sentence would be marginal. The court has also considered the need to avoid sentencing disparities. The imposition of a sentence without the sixteen-level enhancement brings this sentence in line with others that involve similar conduct and similar criminal histories. A judgment in conformity with this sentencing memorandum will be issued.

DATED this 12th day of August, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

9